IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERIE INSURANCE EXCHANGE, an unincorporated association, by members PATRICIA R. BELTZ, JOSEPH S. SULLIVAN and ANITA SULLIVAN, and PATRICIA R. BELTZ, on behalf of herself and others similarly situate,<br><br>    Plaintiffs,<br><br>vs.<br><br>RICHARD L. STOVER; J. RALPH BORNEMAN, JR.; TERRENCE W. CAVANAUGH; JONATHAN HIRT HAGEN; SUSAN HIRT HAGEN; THOMAS B. HAGEN; C. SCOTT HARTZ; CLAUDE C. LILLY, III; LUCIAN L. MORRISON; THOMAS W. PALMER; MARTIN P. SHEFFIELD; ELIZABETH H. VORSHECK; and ROBERT C. WILBURN,<br><br>    Defendants. | COMPLAINT - CLASS ACTION<br><br>CIVIL ACTION NO. ~~2:13-cv-~~ 1:13-cv-37<br><br>**Electronically Filed**<br><br><br><br><br>Filed on behalf of:<br><br>Erie Insurance Exchange, an unincorporated association, by members Patricia R. Beltz, Joseph S. Sullivan and Anita Sullivan, and Patricia R. Beltz, on behalf of herself and others similarly situate,<br>                                        Plaintiffs |

Counsel of Record for these Parties:

William M. Radcliffe, Esquire
I.D. No. PA 18148
William M. Martin, Esquire
I.D. No. 204347
RADCLIFFE & DeHAAS, L.L.P.
2 West Main Street, Suite 700
Uniontown, Pennsylvania 15401
1.724.439.3900 (telephone)
1.724.439.3335 (facsimile)
e-mail: wmr@rightlawfirm.com

## COMPLAINT

### Introduction

The Plaintiffs have filed the following claims in this complaint:

(a)  A class action, pursuant to F.R.C.P. 23.2, by Patricia R. Beltz, on behalf of the members of Erie Insurance Exchange, an unincorporated association, against the Defendants (First Cause of Action); and

(b)  Alternatively, a non-class action under Pennsylvania law on behalf of Erie Insurance Exchange, an unincorporated association, by Patricia R. Beltz, Joseph S. Sullivan and Anita Sullivan, members thereof (Second Cause of Action).

These claims have been filed in this manner as it is unclear whether the Defendants have a legal obligation to Exchange or the members of Exchange, or both, as hereinafter set forth.

### The Plaintiffs

1.  Erie Insurance Exchange (hereinafter "Exchange") is a Pennsylvania-domiciled unincorporated association comprised of its members (hereinafter "Policyholders").

2.  Exchange issues insurance policies in Pennsylvania and other states, and in order to be a member of Exchange, a person is required to be insured by Exchange.

3.  Patricia R. Beltz, Joseph S. Sullivan and Anita Sullivan are all Policyholders of Exchange, residing in Allegheny County and Fayette County, Pennsylvania, respectively (hereinafter "Named Members").

4.  Exchange is owned by its Policyholders.

5.  Exchange does not have any independent officers, board of directors, bylaws, or other organizing documents.

6. Exchange has no employees and is operated by a separate corporation, Erie Indemnity Company (hereinafter "Indemnity"), pursuant to a Subscriber Agreement (hereinafter "Subscriber Agreement"). A copy of the Subscriber Agreement is attached hereto as Exhibit "A."

### The Defendants (Trustees)

7. The Defendant, Richard L. Stover, is believed to have been a trustee of Exchange since 2010, and resides in Gibsonia, Pennsylvania.

8. The Defendant, J. Ralph Borneman, Jr., is believed to have been a trustee of Exchange since at least 1997, and resides in Boyertown, Pennsylvania.

9. The Defendant, Terrence W. Cavanaugh, is believed to have been a trustee of Exchange since 2008, and resides in Erie, Pennsylvania.

10. The Defendant, Jonathan Hirt Hagen, is believed to have been a trustee of Exchange since 2005, and resides in Philadelphia, Pennsylvania.

11. The Defendant, Susan Hirt Hagen, is believed to have been a trustee of Exchange since at least 1997, and resides in Erie, Pennsylvania.

12. The Defendant, Thomas B. Hagen, is believed to have been a trustee of Exchange in 1997 and since 2007, and resides in Erie, Pennsylvania.

13. The Defendant, C. Scott Hartz, is believed to have been a trustee of Exchange since 2003, and resides in Bala Cynwyd, Pennsylvania.

14. The Defendant, Claude C. Lilly, III, is believed to have been a trustee of Exchange since 2000, and resides in Clinton, South Carolina.

15. The Defendant, Lucian L. Morrison, is believed to have been a trustee of Exchange since 2006, and resides in Houston, Texas.

16. The Defendant, Thomas W. Palmer, is believed to have been a trustee of Exchange since 2006, and resides in Toledo, Ohio.

17. The Defendant, Martin P. Sheffield, is believed to have been a trustee of Exchange since 2010, and resides in Bath, Pennsylvania.

18. The Defendant, Elizabeth H. Vorsheck, is believed to have been a trustee of Exchange since 2007, and resides in Brooksville, Florida.

19. The Defendant, Robert C. Wilburn, is believed to have been a trustee of Exchange since 1999, and resides in Washington, D.C.

20. Each of the Defendants is a Trustee of Exchange (hereinafter collectively "the Trustees").

21. It is believed each of the Trustees executed an "Acceptance of Trust" to act as a Trustee of Exchange and also executed financial documents as Trustees of Exchange. The Plaintiffs do not have a copy of the Acceptance of Trust, and it was not sent to any Policyholders.

22. The Defendants are appointed as Trustees by Indemnity or Indemnity's shareholders, and the Policyholders are not informed of their appointment.

23. Each of the Trustees is also a member of the board of directors of Indemnity, owns common stock of Indemnity (except for Trustee Morrison) and receives compensation as a member of the board of directors of Indemnity.

## Jurisdiction

24. This Court has jurisdiction of this matter pursuant to 28 U.S.C. §1332(d) ("the Class Action Fairness Act").

25. The Class Action Fairness Act provides that "[t]he district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant; . . . ." 28 U.S.C. §1332(d)(2)(A).

26. It is believed Exchange currently has more than two million Policyholders in at least ten different states (Illinois, Indiana, Maryland, North Carolina, Ohio, Pennsylvania, Tennessee, Virginia, West Virginia and Wisconsin) and the District of Columbia.

27. The matter in controversy herein exceeds the sum or value of $5,000,000, exclusive of interest and costs.

## Subscriber Agreement

28. In order to receive an insurance policy from Exchange, each Policyholder signs a Subscriber Agreement which contains an appointment of Indemnity as his/her Attorney-in-Fact to transact the business of Exchange on his/her behalf.

29. The Subscriber Agreement is a non-negotiable preprinted form prepared by Indemnity, and is a standardized adhesion contract which has been in effect in that form since at least 1990.

30. Pursuant to a power of attorney contained in the Subscriber Agreement, Indemnity acts as the agent and Attorney-in-Fact of Exchange.

31. The Subscriber Agreement gives Indemnity complete operational control of Exchange's insurance business.

32. Indemnity is required to perform the services set forth in the Subscriber Agreement regardless of the cost to Indemnity.

33. Those services include, but are not limited to, policy issuance, cancellation of policies, collection of premiums, and processing of invoices for premiums.

34. In return for Indemnity's services as Attorney-in-Fact, Indemnity is paid a percentage of all written and assumed premiums received by Exchange.

35. The maximum compensation Indemnity is entitled to receive for the services it performs pursuant to the Subscriber Agreement is 25% of said premiums.

36. Since at least 2007, Indemnity has received from Exchange the maximum amount of 25% of Exchange's written and assumed premiums as compensation for its services under the Subscriber Agreement.

## Service Charges and Added Service Charges

37. If a Policyholder elects to pay his/her premium in installments, an additional fee is charged (hereinafter "Service Charges").

38. Prior to September 1, 1997, all Services Charges had been retained by Exchange.

39. Beginning on September 1, 1997, the Trustees or their predecessors authorized or permitted Exchange to reimburse Indemnity a portion of the Service Charges for the costs incurred by Indemnity in allowing Policyholders to pay their premiums in installment payments.

40. Beginning in 1999 and each year thereafter, the Trustees or their predecessors authorized or permitted Indemnity to retain all of the Service Charges, despite the fact that the amount of the Service Charges was clearly in excess of the additional costs incurred, if any, by Indemnity in collecting premiums paid in installment payments.

41. In addition, if a premium is not paid on time, or a policy has been cancelled due to non-payment and is reinstated, additional fees are paid by Policyholders (hereinafter "Added Services Charges").

42. Beginning in 2008 and each year thereafter, the Trustees or their predecessors authorized or permitted Indemnity to retain all of the Added Service Charges.

43. There is no agreement between Indemnity and Exchange signed by an authorized independent representative of Exchange authorizing the Service Charges or Added Service Charges to be reimbursed to or retained by Indemnity.

44. The reimbursement of Service Charges and Added Service Charges to Indemnity described in paragraphs 39, 40 and 42 has continued to date and has been authorized each year by the Trustees.

45. The amount of Service Charges and Added Service Charges retained by Indemnity, for its own benefit, are as follows from 1998 through 2011:

   (a) 1998 - $7,164,000 (Service Charges only);

   (b) 1999 - $7,283,000 (Service Charges only);

   (c) 2000 - $12,513,000 (Service Charges only);

   (d) 2001 - $15,996,000 (Service Charges only);

   (e) 2002 - $10,900,000 (Service Charges only);

   (f) 2003 - $19,900,000 (Service Charges only);

   (g) 2004 - $21,100,000 (Service Charges only);

   (h) 2005 - $20,500,000 (Service Charges only);

   (i) 2006 - $29,200,000 (Service Charges only);

   (j) 2007 - $29,600,000 (Service Charges only);

   (k) 2008 – $32,300,000 (Service Charges and Added Service Charges);

   (l) 2009 - $34,800,000 (Service Charges and Added Service Charges);

   (m) 2010 - $34,000,000 (Service Charges and Added Service Charges); and

(n)    2011 - $33,000,000 (Service Charges and Added Service Charges).

46.    The amounts set forth above may be slightly overstated during the years 1998-2010 inclusive, as, during those years, Indemnity also may have collected Service Charges and Added Service Charges on behalf of several Indemnity subsidiaries. However, that information is within the possession and control of the Trustees.

### First Cause of Action

### Class Action

### Patricia R. Beltz, on behalf of herself and others similarly situate v. Trustees

### Breach of Fiduciary Duty – Prohibited Self-Dealing

47.    The allegations of paragraphs 1 through 46 above are incorporated herein by reference thereto as if set forth at length.

48.    The Plaintiff, Patricia R. Beltz, brings this action on behalf of herself and all others similarly situate as a class action under Rule 23.2 of the Federal Rules of Civil Procedure.

49.    The Plaintiff, Patricia R. Beltz, seeks to represent all Policyholders of Exchange, as of the date of the filing of this complaint, as a class.

50.    While the exact number of Policyholders is unknown at this time to the Plaintiff, Patricia R. Beltz, and can only be determined by appropriate discovery, membership in the class is ascertainable based upon the records maintained by the Trustees. At this time, the Plaintiff, Patricia R. Beltz, is informed and believes that the class includes over two million Policyholders.

51.    The names and addresses of the Policyholders are available from the Trustees' records. Notice can be provided to the Policyholders through direct mailing.

52.    The Plaintiff, Patricia R. Beltz, will fairly and adequately represent and protect the interests of the Class as required by Federal Rule of Civil Procedure Rule 23.2. The Plaintiff,

Patricia R. Beltz, is an adequate representative of the Policyholders, because she has no interest which is adverse to the interests of the Policyholders. The Plaintiff, Patricia R. Beltz, is committed to the vigorous prosecution of this action and, to that end, the Plaintiff, Patricia R. Beltz, has retained counsel who are competent and experienced in handling class action litigation on behalf of consumers.

53. As Exchange has no bylaws or independent directors or officers elected by the Policyholders, no person or entity has exercised independent judgment on behalf of Exchange with regard to any transactions between Indemnity and Exchange.

54. At all times pertinent hereto, the Trustees had a fiduciary duty to protect the interests of Exchange and its Policyholders pursuant to the Acceptance of Trust and their responsibilities under Pennsylvania law as Trustees, but, in fact, they did not take into account the interests of Exchange and its Policyholders in permitting the actions described in paragraph 44 and allowed Indemnity to receive additional compensation for duties Indemnity was already required to perform pursuant to the Subscriber Agreement.

55. Specifically, at all times pertinent hereto, as part of their fiduciary duties, the Trustees were required to *inter alia* operate Exchange for the benefit of Exchange and its Policyholders, to protect the interests of Exchange and its Policyholders, to not allow Indemnity to self-deal with its fiduciary, to not allow Indemnity to charge in excess of 25% of premiums for its services, and to cause Indemnity to act in the best interests of Exchange and its Policyholders.

56. Further, at all times pertinent hereto, the Trustees also owed a duty of loyalty, and full disclosure of all material facts to Exchange and its Policyholders.

57. This duty of full disclosure required the Trustees *inter alia* to fully disclose on a continuing basis the following to all Policyholders: (a) that prior to September 1, 1997, Exchange

received all Service Charges; (b) that beginning September 1, 1997, Indemnity ultimately determined that Exchange was to "reimburse" Indemnity for its out-of-pocket expenses in collecting Service Charges; (c) that subsequent to October 1999, Indemnity ultimately retained all Service Charges from Exchange; (d) that beginning in 2008, Indemnity retained all Added Service Charges; and (e) that the Service Charges and Added Service Charges exceeded Indemnity's costs in administering the collection of Service Charges and Added Service Charges.

58. Further, by the nature of their position, the Trustees were in a relationship of trust and confidence with Exchange and its Policyholders, and a confidential relationship existed between the Trustees and Exchange and its Policyholders.

59. The Trustees have breached their fiduciary obligations to Exchange and its Policyholders.

60. As a result of the aforesaid breach, the Policyholders are entitled to the damages set forth in paragraph 45 herein.

WHEREFORE, the Plaintiff, Patricia R. Beltz, on behalf of herself and others similarly situate, pursuant to Federal Rule of Civil Procedure 23.2, requests that the Court certify the Class as hereinbefore set forth in paragraph 49 and requests damages plus pre-judgment and post-judgment interest and costs of suit.

## Second Cause of Action

## Erie Insurance Exchange, an unincorporated association, by members, Patricia R. Beltz, Joseph S. Sullivan and Anita Sullivan v. Trustees

## Pendent Jurisdiction

## FIRST COUNT

## Breach of Fiduciary Duty - Prohibited Self-Dealing

61. The allegations of paragraphs 1 through 46 above are incorporated herein by reference thereto as if set forth at length.

62. The Named Members file this claim on behalf of Exchange in their capacity as Policyholders of Exchange.

63. Exchange has no bylaws or independent directors or officers elected by the Policyholders.

64. Accordingly, no person or entity has exercised independent judgment on behalf of Exchange with regard to transactions between Indemnity and Exchange.

65. At all times pertinent hereto, the Trustees had a fiduciary duty to protect the interests of Exchange and its Policyholders pursuant to the Acceptance of Trust and their responsibilities under Pennsylvania law as Trustees, but, in fact, they did not take into account the interests of Exchange and its Policyholders in permitting the actions described in paragraph 44 and allowed Indemnity to receive additional compensation for duties Indemnity was already required to perform pursuant to the Subscriber Agreement.

66. Specifically, at all times pertinent hereto, as part of their fiduciary duties, the Trustees were required to *inter alia* operate Exchange for the benefit of Exchange and its Policyholders, to protect the interests of Exchange and its Policyholders, to not allow Indemnity

to self-deal with its fiduciary, to not allow Indemnity to charge in excess of 25% of premiums for its services, and to cause Indemnity to act in the best interests of Exchange and its Policyholders.

67.     At all times pertinent hereto, the Trustees also owed a duty of loyalty, and full disclosure of all material facts to Exchange and its Policyholders.

68.     This duty of full disclosure required the Trustees *inter alia* to fully disclose on a continuing basis the following to all Policyholders: (a) that prior to September 1, 1997, Exchange received all Service Charges; (b) that beginning September 1, 1997, Indemnity ultimately determined that Exchange was to "reimburse" Indemnity for its out-of-pocket expenses in collecting Service Charges; (c) that subsequent to October 1999, Indemnity ultimately retained all Service Charges from Exchange; (d) that beginning in 2008, Indemnity retained all Added Service Charges; and (e) that the Service Charges and Added Service Charges exceeded Indemnity's costs in administering the collection of Service Charges and Added Service Charges.

69.     Further, by nature of their position, the Trustees were in a relationship of trust and confidence with Exchange, and a confidential relationship existed between the Trustees and Exchange and its Policyholders.

70.     The Trustees have breached their fiduciary obligations to Exchange and its Policyholders.

71.     As a result of the aforesaid breach, Exchange is entitled to the damages set forth in paragraph 45 herein.

WHEREFORE, Exchange, by the Named Members, demands compensatory and punitive damages plus post-judgment interest and costs.

**Erie Insurance Exchange, an unincorporated association,
by members, Patricia R. Beltz, Joseph S. Sullivan and Anita Sullivan v. Trustees**

## ALTERNATIVE COUNT

### Derivative Action

72. The allegations of paragraphs 1 through 46 above are incorporated herein by reference thereto as if set forth at length.

73. The Named Members bring this alternative claim on behalf of Exchange as a derivative action pursuant to F.R.C.P. 23.1.

74. To the knowledge of the Policyholders, Exchange has no bylaws or other "organic documents" which create an independent board of directors or independent officers for Exchange.

75. Accordingly, there is no person to address a request for enforcement of Exchange's interests.

76. Alternatively, a formal demand in this matter would be fruitless as there is no independent entity to address such a demand.

77. Further, an action was instituted in the Court of Common Pleas of Fayette County, Pennsylvania, at No. 1712 of 2012, G.D., against Indemnity on August 1, 2012, to obtain the desired action.

78. The Named Members were owners of interests in Exchange at the time of the transactions complained of or succeeded to the interests of Policyholders who were owners at that time.

79. This is not a collusive action to confer jurisdiction that the Court would otherwise lack.

80. No person or entity has exercised independent judgment on behalf of Exchange with regard to transactions between Indemnity and Exchange.

81. At all times pertinent hereto, the Trustees had a fiduciary duty to protect the interests of Exchange and its Policyholders pursuant to the Acceptance of Trust and their responsibilities under Pennsylvania law as Trustees, but, in fact, they did not take into account the interests of Exchange and its Policyholders in permitting the actions described in paragraph 44 and allowed Indemnity to receive additional compensation for duties Indemnity was already required to perform pursuant to the Subscriber Agreement.

82. Specifically, at all times pertinent hereto, as part of their fiduciary duties, the Trustees were required to *inter alia* operate Exchange for the benefit of Exchange and its Policyholders, to protect the interests of Exchange and its Policyholders, to not allow Indemnity to self-deal with its fiduciary, to not allow Indemnity to charge in excess of 25% of premiums for its services, and to cause Indemnity to act in the best interests of Exchange and its Policyholders.

83. Further, at all times pertinent hereto, the Trustees also owed a duty of loyalty, and full disclosure of all material facts to Exchange and its Policyholders.

84. This duty of full disclosure required the Trustees *inter alia* to fully disclose on a continuing basis the following to all Policyholders: (a) that prior to September 1, 1997, Exchange received all Service Charges; (b) that beginning September 1, 1997, Indemnity ultimately determined that Exchange was to "reimburse" Indemnity for its out-of-pocket expenses in collecting Service Charges; (c) that subsequent to October 1999, Indemnity ultimately retained all Service Charges from Exchange; (d) that beginning in 2008, Indemnity retained all Added

Service Charges; and (e) that the Service Charges and Added Service Charges exceeded Indemnity's costs in administering the collection of Service Charges and Added Service Charges.

85. Further, by nature of their position, the Trustees were in a relationship of trust and confidence with Exchange, and a confidential relationship existed between the Trustees and Exchange and its Policyholders.

86. The Trustees have breached their fiduciary obligations to Exchange and its Policyholders.

87. As a result of the aforesaid breach, Exchange is entitled to the damages set forth in paragraph 45 herein.

WHEREFORE, Exchange, by the Named Members, demands compensatory and punitive damages plus post-judgment interest and costs.

A JURY TRIAL IS DEMANDED.

        RADCLIFFE & DeHAAS, L.L.P.

        BY s/*William M. Radcliffe*
         William M. Radcliffe, Esquire
         I.D. No. PA 18148
         2 West Main Street, Suite 700
         Uniontown, PA 15401
         Telephone: 1.724.439.3900
         Facsimile: 1.724.439.3335
         e-mail: wmr@rightlawfirm.com

         Attorney for Erie Insurance Exchange,
         an unincorporated association, by members
         Patricia R. Beltz, Joseph S. Sullivan and
         Anita Sullivan, and Patricia R. Beltz, on
         behalf of herself and others similarly situate

## VERIFICATION

I, PATRICIA R. BELTZ, verify that the statements made in this COMPLAINT are true and correct to the best of my knowledge, information, and belief. I understand that statements herein are made subject to the penalties of 18 Pa.C.S.A. §4904, relating to unsworn falsifications to authorities.

_____